No. 49,339

STATE OF KANSAS, *Appellee,* v. RODNEY LEROY PHIPPS,
*Appellant.*

(578 P.2d 709)

Opinion filed May 6, 1978.

*Larry D. Friesen,* of Hutchinson, argued the cause and was on the brief for the appellant.

*Robert S. Streepy,* assistant county attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Joseph P. O'Sullivan,* county attorney, and *James Turner,* assistant county attorney, were on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: Defendant Rodney LeRoy Phipps appeals from a conviction of first degree murder (K.S.A. 21-3401).

The record reveals that on November 23, 1977, defendant went to a residence in South Hutchinson, Kansas. Shortly after he

arrived he became embroiled in a fight with the victim, Harlan Gail Calkins. The fight started in the front room of the house, continued into the dining room, and culminated in the bathroom. When defendant emerged from the bathroom he went to the back bedroom to talk to his sister-in-law. Shortly thereafter he left the bedroom, kicked in the bathroom door, and continued beating and kicking Calkins. Defendant emerged from the bathroom again with blood on his boots. At defendant's insistence the other occupants entered the bathroom. Calkins was lying on his back on the floor, obviously injured. Blood was spattered on the floor, walls and ceiling of the room.

Defendant ordered that no one call an ambulance. He left and returned to the house twice. He finally loaded Calkins into the family car and Calkins' wife took her husband to the hospital where he was pronounced dead on arrival. Before he left the house on the last occasion defendant told his mother-in-law and his sister-in-law not to tell the police what had happened because he would get into trouble. When they were questioned by the police they originally lied, but later told police about the fight.

At trial it was revealed that there were continuous problems between defendant and the deceased. The deceased had felt the defendant was running the family and disapproved. On the afternoon of the crime defendant was quoted as saying, "I'm going to get that hunchback son-of-a-bitch," referring to Calkins.

Dr. Hans Lettner, county coroner, testified that death was caused by aspiration of blood into the lungs, which resulted from a massive blow to the anterior part of the skull. In his opinion the configuration of the weapon used to deliver the blow corresponded to the shape of defendant's boots. The boots were analyzed by the KBI laboratory and found to be covered with human blood.

Defendant's first point on appeal concerns the admission of two groups of photographs. The first group contained fourteen black and white photographs of the deceased as he appeared when taken to the hospital. The second group consisted of six color photographs of the deceased showing the injuries to his head and showing the cuts and bruises inflicted by defendant. The point has no merit as defendant failed to object to the admission of the photographs at trial. Our long-standing rule is that failure to lodge a contemporaneous objection to the admission of evidence

prohibits a defendant from complaining about the admission of that evidence on review. See, K.S.A. 60-404 and the many cases cited in the annotation following the statute. Defendant argues we should adopt a rule that the trial court should exclude evidence *sua sponte.* The requirement that a contemporaneous objection be made was upheld in *State v. Fisher,* 222 Kan. 76, 563 P.2d 1012 (1977), and we adhere to that ruling.

Notwithstanding the failure to object, this court has repeatedly held that the admission of photographs of a decedent is not error when they are relevant to matters in issue such as the cause and manner of death and an aid in the understanding of a pathologist's testimony. (*State v. Childers,* 222 Kan. 32, 44, 563 P.2d 999 [1977]; *State v. Henson,* 221 Kan. 635, 646, 562 P.2d 51 [1977]; *State v. Villa & Villa,* 221 Kan. 653, 654, 561 P.2d 428 [1977].) The photographs were relevant to the issues of the case. They were used by the pathologist to explain the cause of death. They further show the violent and brutal nature of the attack by defendant and rebut defendant's assertion that the affray was only minor. They were relevant to establish that the murder was premeditated and not accidental. There was no error in the admission of the photographs.

Defendant's second point concerns the admission of statements of the deceased through the deceased's sister. Defendant contends they are hearsay and not admissible through any of the statutory exceptions. The state takes the position that the statements are admissible under K.S.A. 60-460(*d*)(3).

We have read the statements and find 60-460 does not apply because the statements are not hearsay. Hearsay evidence is "evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated." (K.S.A. 60-460.) The statements made by the deceased prior to his death reflected that he felt defendant was running his family life. No one was trying to prove this was true; the statements were introduced solely to show the deceased's state of mind before his death and to demonstrate to the jury the rift between defendant and the deceased. Under the circumstances the statements were admissible independent of the exceptions contained in K.S.A. 60-460. (See, *State v. James,* 223 Kan. 107, 574 P.2d 181 [1977]; *State v. Hall,* 220 Kan. 712, 556 P.2d 413 [1976]; *State v. Crowley,* 220 Kan. 532, 552 P.2d 971 [1976]; *State v. Ralls,* 216 Kan. 692, 533 P.2d 1294 [1975].)

The third point on appeal concerns the introduction of rebuttal evidence. The state introduced the evidence after defendant took the stand and told the jury that Calkins, not he, started the fight which led to Calkins' death. He stated the fight was very minor and could not have caused the death. Sherry Hammond, twelve years old, testified that defendant came into the house, ordered her mother, two sisters and brother into the bedroom, and then started hitting her stepfather. At one point she looked out the bedroom door and saw defendant step on her stepfather's stomach and beat his head on the floor. She heard her stepfather get up, run into the bathroom and close the door. Defendant pursued him and continued the fight. A short time later defendant came into the bedroom and talked to Sherry's sister. Defendant then went back to the bathroom, broke down the door and continued hitting Calkins. When defendant again returned to the bedroom he had blood on his hands and boots. At that point he advised the occupants of the bedroom that they could come out of the room. Later, defendant loaded Calkins into the family car.

Defendant contends it was an abuse of discretion to allow Sherry Hammond's testimony to be introduced. It is well established that rebuttal evidence is that which is used to deny some fact an adverse party has attempted to disprove or has placed in dispute. It may be used to explain, repel, counteract or disprove testimony or facts introduced by or on behalf of the adverse party. Such evidence includes not only testimony which contradicts the witnesses on the opposite side, but also corroborates previous testimony. The use and extent of rebuttal rests in the sound discretion of the trial court and its ruling will not be reversed unless it appears the discretion has been abused to a party's prejudice. (See, *State v. Burnett,* 221 Kan. 40, 43, 558 P.2d 1087 [1976], and authorities cited therein.)

It was not an abuse of discretion to allow the rebuttal evidence. While it was evidence which might have been introduced in the case in chief, it was not improper to use the evidence in rebuttal. The testimony clearly contradicted defendant's story that Calkins was the aggressor, that the fight was short, and that it could not have been severe enough to cause Calkins' death.

As a fourth point defendant alleges specific instances of prosecutorial misconduct. First, defendant alleges the prosecutor pre-

judiced the jury by admitting defendant's boots into evidence too quickly. We see no merit to this argument as the boots were admissible. Secondly, defendant argues the prosecutor prejudiced the jury by describing the acts of defendant as "stomping" the victim. This word was originally injected into the trial by a KBI witness to describe the blood spatters on the boots; therefore, it was not improper in closing argument. Furthermore, the prosecutor's argument was never objected to by defense counsel. Finally, defendant objects to the prosecutor's reference to his past criminal record. This, too, was never objected to at trial and is now beyond review.

As defendant's final point he attacks the sufficiency of the evidence on the issue of premeditation. The record reflects the state's evidence included a witness who testified defendant was going to "get" the deceased. There was extensive evidence that the deceased and defendant had been having disagreements and this led to the fight on the fateful night. Some of the evidence indicates defendant left his victim in the bathroom, then returned, broke down the door, and continued to beat the victim as he lay on the floor. Under all the facts and circumstances a jury could reasonably have drawn an inference of premeditation to establish first degree murder. (See, *State v. Buie,* 223 Kan. 594, 575 P.2d 555 [1978]; *State v. Martinez,* 223 Kan. 536, 575 P.2d 30 [1978].)

We have reviewed each of the errors presented by defendant and find them without merit.

Under the new rules of appellate procedure effective January 10, 1977, any references to facts contained in the record are to be keyed to the record on appeal "so as to make verification reasonably convenient." See, Rule No. 6.02(*d*), Rules of the Supreme Court, 220 Kan. xxxix. Counsel in this appeal were lax in complying with this rule. Members of the bar should take note or it may become necessary to impose sanctions in the future.

The judgment of the trial court is affirmed.