No. 49,777

STATE OF KANSAS, *Appellee,* v. WILLIAM STANLEY SHULTZ, *Appellant.*

(587 P.2d 901)

Opinion filed December 9, 1978.

*David C. All,* of Augusta, argued the cause and was on the brief for the appellant.

*Geary N. Gorup,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: A jury convicted the defendant, William Stanley

Shultz, of the second-degree murder (K.S.A. 21-3402) of his mother, but found him not guilty by reason of insanity on a charge of attempted murder of his father. He appeals, and raises various trial and instructional errors.

Shultz was 18 years of age and lived with his parents in El Dorado, Kansas. He was employed and had his own automobile; on June 19, 1975, he damaged the car. His mother was upset and she scolded him; according to Shultz, his mother told him that he would be committed to the Osawatomie State Hospital if he caused any further difficulties. Shultz arose early on the following morning. He went to the back yard and contemplated killing himself with a paring knife, but finally decided that his parents should go first. He went to the bedroom where his mother was sleeping, and he fatally wounded her by striking her in the head once or twice with a sledgehammer. Next he loaded a double-barreled 12-gauge shotgun and entered his father's bedroom. His father awoke and started to get up; defendant shot at him twice at close range, striking him in the right chest and right arm. His father described Bill's expression at the time as "unusual" and "determined." Defendant left the room; his father followed, and defendant attacked him with the sledgehammer; after a brief scuffle, defendant left the house. His father next discovered his wife's body, and decided to go for help. He went outside to his truck, where defendant again assaulted him. The two grappled and fell to the ground. The father was exhausted from the struggle and he was bleeding profusely. He pleaded with Bill to get help, saying that he would die without help. Bill's expression suddenly changed; he said "OK" and promptly walked to a neighbor's house where he solicited help. The neighbor took the senior Shultz to the hospital. The defendant was found walking along the highway about an hour later; he was arrested and taken into custody.

Defendant first contends that the trial court erred in permitting a former deputy county attorney to give his opinion as to the defendant's sanity without first laying a proper foundation for the basis of that opinion. Philip Hamm, a former deputy county attorney, was called as a witness by the state. Hamm testified about conversations he had with the defendant during the 12 or 14-hour period following arrest. On cross-examination, and over the objection of the state, the following question was asked and answered:

"Q. (By Mr. All) And what conditions or what opinion did you reach as to his mental stability at the time of the act?

"A. I believe he was unstable at the time."

On redirect examination the state asked Hamm his opinion of the defendant's ability to determine right from wrong. Over defense objections, the court allowed the witness to answer. Defendant claims this was error.

It has been the rule in this state for many years that nonexpert witnesses who are shown to have had special opportunities to observe may give opinion evidence as to sanity. See *State v. Randol,* 212 Kan. 461, 468, 513 P.2d 248 (1973) and cases therein cited; *State v. Truskett,* 85 Kan. 804, 821, 118 Pac. 1047 (1911); *State v. Beuerman,* 59 Kan. 586, 589, 53 Pac. 874 (1898); and see K.S.A. 60-456. The weight to be given such testimony, as well as the weight to be accorded expert testimony, is for the jury to determine. *State v. Randol,* 212 Kan. at 468; and see *State v. Sanders,* 225 Kan. 147, 587 P.2d 893 (1978).

When the opinion of a witness is first elicited on cross-examination, the extent to which that opinion may be explored on redirect examination is within the discretion of the trial court. *State v. Stephenson,* 217 Kan. 169, Syl. ¶ 2, 535 P.2d 940 (1975). And as we observed in *Stephenson,* once the door was open, the prosecution was free to enter and explore. We have examined the record in the case now before us, and we hold that the trial court did not abuse its discretion in permitting the prosecution to inquire into the witness's opinion, after the defense inquired into the matter.

The appellant next claims that the trial court erred in admitting into evidence a note used in rebuttal by the State, for the reasons that the note was irrelevant, immaterial, lacking in proper foundation, and not proper rebuttal.

Dr. Gerald G. Kaufman, a psychiatrist, testified as a defense witness. His opinion was based in part upon interviews with the defendant, in which the defendant described his feelings of guilt which began to appear within a week after the crimes. Dr. Kaufman expressed confidence in the defendant's statements to him, and stated in substance that he felt that the defendant had not been deceiving him during the interviews. The doctor admit-

ted that if he had based his opinion on incomplete or incorrect data, then the opinion would also be inaccurate. Against this backdrop, the state introduced a handwritten note which a jailer had confiscated from a young woman prisoner who was being held in the Butler County jail during defendant's incarceration. The note was signed "Bill Shultz" and was addressed to the female prisoner. It said in part:

"Lori:

"Hi, my name is Bill Shultz and I'm a weird one. I've been in here for 6 months already  .   .   .   I'm in here for 1st degree murder and attempt to kill. I did my old lady in (mother) and tried to do my old man in but he survived. Too bad my old man survived though I'd liked to of seen him dead instead. I'm 18 years of age, about 6 foot, 280 lbs., and a pretty good lover some say.  .   .   .   Might have to do 15 years to life up at Hutch prison if I'm not lucky.  .   .   .

"Bill Shultz"

Rebuttal evidence is that which contradicts evidence introduced by an opposing party. It may tend to corroborate evidence of a party who first presented evidence on the particular issue, or it may refute or deny some affirmative fact which an opposing party has attempted to prove. "It may be used to explain, repel, counteract or disprove testimony or facts introduced by or on behalf of the adverse party. Such evidence includes not only testimony which contradicts the witnesses on the opposite side, but also corroborates previous testimony. The use and extent of rebuttal rests in the sound discretion of the trial court and its ruling will not be reversed unless it appears the discretion has been abused to a party's prejudice." *State v. Phipps,* 224 Kan. 158, 161, 578 P.2d 709 (1978).

The note tends to refute the testimony of Dr. Kaufman that Shultz felt guilt or remorse, and it also tends to show that the doctor's testimony was not based on complete and accurate data. We hold that it was proper rebuttal evidence. That it was relevant and material to the issues is obvious.

The admission into evidence of notes, purportedly signed by prisoners and intercepted in the county jail during incarceration, was challenged in *State v. Rives,* 220 Kan. 141, 551 P.2d 788 (1976), and in *State v. Milum,* 202 Kan. 196, 447 P.2d 801 (1968). In the latter case we said:

"Proof of the genuineness of a letter may be established when the contents themselves reveal knowledge peculiarly referable to a certain person or the contents are of such nature that the letter could not have passed between persons

other than the purported writer and the person to whom it was delivered. [Citations omitted.] For that matter, any relevant writing may be admitted when, from its contents or other circumstances in evidence, it is reasonably inferable that the author is the person sought to be charged. Whether or not the authenticity of a writing is sufficiently established to render it admissible in evidence is a matter largely within the discretion of the trial court." (p. 198.)

The contents of the note now before us, and the circumstances of its acquisition by the jailer, give rise to a reasonable inference that Shultz was the author of that document. We hold that there was sufficient foundation to support the admission of the note into evidence.

Appellant's third claim is that the trial court erred in allowing an expert psychiatric witness for the state to testify on the day following that on which his report was filed. The record shows that the witness filed an earlier report; both counsel requested a more detailed report, and this was the report filed on the eve of trial. After the state concluded its direct examination of the witness, the defense requested a recess, and the court recessed the trial until the following day in order to give defense counsel a further opportunity to study the five-page report. When trial resumed on the following day, the witness was thoroughly cross-examined; there was no request for a further continuance.

The matter of the examination of this witness was one of trial procedure, a matter which is within the sound discretion of the trial court. The defendant was not prejudiced by the procedure followed, and the trial court did not abuse its discretion in permitting the witness to testify.

The fourth claim of error is that the testimony of the psychiatrists should not have been read to the jury from the reporter's notes. The jury requested that the testimony of both psychiatrists (one of whom was a prosecution witness, one a defense witness) be read back to them. Because of the lateness of the hour on a Friday afternoon, the judge recessed court until the following morning when the reading was to commence. One of the jurors was ill and could not attend the Saturday session, so court was recessed until the following Monday morning. All jurors returned and the reporter read the requested testimony. As we held in the recent case of *State v. Watie, Heard and Heard,* 223 Kan. 337, 341, 574 P.2d 1368 (1978), if the jury asks to have the testimony of any witness read to them, it is proper for the trial court to require the official court reporter to do so in the presence of the parties to the action. That procedure was followed here. We find no error.

As a fifth point, defendant contends it was error to instruct the jury that "[m]alice may be inferred from the fact that a deadly weapon was used in a homicide." The instruction was appropriate and is a correct statement of the law. The matter was recently discussed and decided adversely to defendant's contention in *State v. Stafford,* 223 Kan. 62, 65, 573 P.2d 970 (1977) and *State v. Ritchey,* 223 Kan. 99, 101, 573 P.2d 973 (1977). The trial court did not err.

Defendant claims that the trial court erred in allowing the state to endorse the name of Joseph Rankin as a prosecution witness shortly prior to trial. The witness was endorsed six days prior to trial, and under the circumstances we discern no prejudice and no abuse by the trial court in this discretionary matter. Further, Rankin was a rebuttal witness and we have consistently held that the names of rebuttal witnesses need not be endorsed upon the information. See *Talley v. State,* 222 Kan. 289, 292, 564 P.2d 504 (1977) and cases therein cited. This point has no merit.

The seventh claim of error is that the single photograph of the deceased which was received in evidence was error because the defendant stipulated as to the cause of death. The stipulation was simply that the cause of death was skull fracture. How the injury occurred was not stipulated, and the photograph corroborated the prosecution's claim that the defendant used a sledgehammer to kill his mother. It would also support the state's claim that the defendant acted with premeditation. The photograph was taken at the scene and is not unduly gruesome. Under the circumstances we hold that it was properly received in evidence. *State v. Soles,* 224 Kan. 698, 585 P.2d 1032 (1978); *State v. Pencek,* 224 Kan. 725, 585 P.2d 1052 (1978); and *State v. Phipps,* 224 Kan. 158, 578 P.2d 709 (1978).

As his eighth and final point, defendant claims that the trial court erred in failing to grant his post-trial motion for judgment of acquittal by reason of insanity because the evidence was insufficient to support a guilty verdict. After trial, the defendant moved the court to enter judgment of acquittal by reason of insanity notwithstanding the verdict on the second-degree murder conviction, or, in the alternative, to grant a new trial. He now attacks the trial court's ruling on that motion.

The applicable rules were discussed in *State v. Chase,* 206 Kan.

352, 480 P.2d 62 (1971), where the defendant also relied on an insanity defense and contended on appeal that the guilty verdict could not be sustained by the evidence presented. Included in the exhaustive discussion in *Chase* is the following:

"In this state, as we have noted, when evidence is introduced in support of a plea of insanity at the time of the offense, the burden of proof beyond a reasonable doubt on the issue, falls on the prosecution as in the case of any other necessary ingredient of the offense charged. Likewise, the test, on appellate review, of the sufficiency of the evidence to support the verdict is the same as that applied with respect to any other element of the offense.

"The test referred to is stated in our holding in *State v. Helm,* 200 Kan. 147, 434 P.2d 796. We held:

" 'In a criminal prosecution it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before a verdict of a jury which has been approved by the trial court may be set aside on appeal on the ground of insufficiency of evidence, it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the trial court.' (Syl. ¶ 2.)" (p. 363.)

We have carefully reviewed the record in this case, and find substantial competent evidence to support the verdict. Defendant argues that the verdicts were essentially inconsistent. The jury found the defendant guilty of the murder of his mother, and thus sane when he committed that offense; and the jury found him not guilty by reason of insanity, and thus insane, when he attempted to kill his father a short time later. We cannot say that this verdict is without support in the evidence.

It is evident that the defendant feared his mother and viewed her as a "threat." She constantly disciplined him, including an incident which occurred on the evening before the homicide, when she embarrassed and humiliated him in front of others. The choice of the murder weapon, a sledgehammer, could be viewed as a knowing and deliberate selection, made to avoid any noise or disturbance. At the time of the attack upon his father, his actions appeared less rational; he fired shots, then closed the door and left; he attacked his father a second time, broke away and ran from the house; and he attacked his father a third time in the yard. His father described his expressions during this period of time and the jury could well have found that while the first offense was deliberate and intentional, then, after realizing the horrible nature of his acts, the defendant ceased to have the capacity to tell right from wrong at the time he attacked his father.

Assuming, however, that the verdicts are inconsistent, mere inconsistency does not require a reversal. In *State v. McCorgary,* 218 Kan. 358, 543 P.2d 952 (1975), *cert. denied* 429 U.S. 867 (1976), we said:

"[T]he conduct of a jury is sometimes devoid of logic, and inconsistent verdicts may result. Even in cases where the two verdicts are irreconcilable the convictions will not be reversed on grounds of inconsistency. (*State v. Murphy,* 145 Kan. 242, 65 P.2d 342, and *State v. Ogden,* 210 Kan. 510, 502 P.2d 654.)" (p. 366.)

The judgment is affirmed.