(607 P.2d 83)

No. 50,449

In the Matter of the Petitions of GEORGE SHOTWELL and ALBERT GRADES for Writs of Habeas Corpus.

No. 50,795

STATE OF KANSAS, *Appellee,* v. GEORGE SHOTWELL and ALBERT GRADES, *Appellants.*

Petition for review denied April 18, 1980.

Opinion filed February 29, 1980.

Opinion filed February 29, 1980.

*John A. Sparks,* of St. Marys, for the appellant George Shotwell.

*Wayne M. Stallard,* of Onaga, for the appellant Albert Grades.

*Edward W. Pugh,* county attorney, *Robert T. Stephan,* attorney general, and *Michael D. Heck,* legal intern, for the appellee.

Before PARKS, P.J., ABBOTT and SWINEHART, JJ.

SWINEHART, J.: This is a consolidated appeal of cases numbered 50,449 and 50,795. No. 50,449 is an appeal from the Pottawatomie District Court's order dissolving the writs of habeas corpus of petitioners George Shotwell and Albert Grades. The order was

entered on August 21, 1978, and filed September 18, 1978. The petitioners filed an appeal to this court on September 18, 1978.

Before the appeal in No. 50,449 was heard, the petitioners-defendants were convicted of theft of property having a value of more than $50 in violation of K.S.A. 21-3701. On November 10, 1978, Grades was sentenced to a minimum of three and a maximum of ten years; Shotwell, to a minimum of six and a maximum of twenty years, under the enhancement statute. Journal entries were filed on January 12, 1979, and defendants appealed in case No. 50,795 on January 24, 1979.

The primary question on appeal is the same in both cases; that is, whether the defendants' first trial resulting in an acquittal on the burglary charges and a mistrial on the theft charges barred their second trial on the theft charges on the grounds of res judicata and double jeopardy.

Defendants George Shotwell and Albert Grades were tried for the burglary and theft of property having a value of more than $50 of the Hines Farm Center in Wamego on or about May 20, 1978. The defendants' trials were consolidated and held in the Pottawatomie District Court on July 5, 6, and 7, 1978. The jury acquitted the pair on the burglary charges and a mistrial was declared on the theft charges after the court was advised that the jury was hopelessly deadlocked.

Defendants filed writs of habeas corpus while they were awaiting retrial on the theft charges. The writs were dissolved after a hearing on August 21, 1978, and defendants were remanded to the custody of the sheriff for retrial.

After a change of venue to Wabaunsee County, the defendants were tried and convicted on the theft charges. Unlike their first trial, where the defendants took the stand to deny their involvement in the criminal activities, they did not testify in Wabaunsee County.

The defendants contend that they should not have been retried for the criminal theft counts of the information on the grounds of res judicata, collateral estoppel and double jeopardy. The starting point for the inquiry is found in the criminal code of Kansas. K.S.A. 21-3701 provides:

"Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of his property:

"(a) Obtaining or exerting unauthorized control over property;"

K.S.A. 21-3715 provides:

"Burglary is knowingly and without authority entering into or remaining within any building, mobile home, tent or other structure, or any motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony or theft therein."

## K.S.A. 22-3423 provides:

"(1) The trial court may terminate the trial and order a mistrial at any time that he finds termination is necessary because:

.  .  .  .

"(d) The jury is unable to agree upon a verdict  .  .  .  .

.  .  .  .

"(2) When a mistrial is ordered, the court shall direct that the case be retained on the docket for trial or such other proceedings as may be proper and that the defendant be held in custody pending such further proceedings, unless he is released pursuant to the terms of an appearance bond."

The Judicial Council note following K.S.A. 22-3423 states: "A properly ordered mistrial does not prevent a subsequent trial on the same charge, even though the order is made after the defendant has been placed in jeopardy." Indeed, Kansas has long recognized the rule that jeopardy does not attach in a legal sense when a jury has been dismissed because of its failure to agree on the verdict, and as a result, the defendant may be retried a second time on the same charge. *State v. Crowley,* 220 Kan. 532, Syl. ¶ 2, 552 P.2d 971 (1976); *State v. Johnson,* 219 Kan. 847, Syl. ¶ 7, 549 P.2d 1370 (1976); *State v. McKay,* 217 Kan. 11, Syl. ¶ 4, 535 P.2d 945 (1975).

The double jeopardy law in Kansas is embodied in K.S.A. 1979 Supp. 21-3108. The sections most relevant to this appeal are:

"(1) A prosecution is barred if the defendant was formerly prosecuted for the same crime, based upon the same facts, if such former prosecution:

.  .  .  .

"(c) Was terminated without the consent of the defendant after the defendant had been placed in jeopardy, except where such termination shall have occurred by reason of: (i) The illness or death of an indispensable party; or (ii) the inability of the jury to agree; or (iii) the impossibility of the jury arriving at a verdict. A defendant is in jeopardy when he or she is put on trial in a court of competent jurisdiction upon an indictment, information or complaint sufficient in form and substance to sustain a conviction, and in the case of trial by jury, when the jury has been impaneled and sworn, or where the case is tried to the court without a jury, when the court has begun to hear evidence.

.  .  .  .

"(2) A prosecution is barred if the defendant was formerly prosecuted for a different crime, or for the same crime based upon different facts, if such former prosecution:

"(a) Resulted in either a conviction or an acquittal and the subsequent prose-

cution is for a crime or crimes of which evidence has been admitted in the former prosecution and which might have been included as other counts in the complaint, indictment or information filed in such former prosecution or upon which the state then might have elected to rely; or was for a crime which involves the same conduct, unless such prosecution requires proof of a fact not required in the other prosecution, or the crime was not consummated when the former trial began; or

"(b) Was terminated by a final order or judgment, even if entered before trial, which required a determination inconsistent with any fact necessary to a conviction in the subsequent prosecution; or

"(c) Was terminated without the consent of the defendant after the defendant had been placed in jeopardy, except where such termination shall have occurred by reason of . . . (ii) the inability of the jury to agree . . . and the subsequent prosecution is for an offense of which the defendant could have been convicted if the former prosecution had not been terminated improperly."

*In re Berkowitz,* 3 Kan. App. 2d 726, 602 P.2d 99 (1979), contains an extensive analysis of double jeopardy law as it exists in Kansas which will not be repeated here, except to note that there the court analyzes K.S.A. 1979 Supp. 21-3108(2)(*a*) and concludes that it incorporates both the compulsory joinder rule, formerly K.S.A. 62-1449, and the constitutional "identity of elements rule," *i.e.,* where each offense requires proof of a fact not required by the other, double jeopardy is not a bar. Although the defendants make no argument as to 21-3108(2)(*a*), the State properly notes that it complied with this section by joining both crimes in one trial. Furthermore, defendants concede that "in theory the State is free to retry them on the theft charge because the legal elements which must be proved for a conviction of theft are different than those legal elements which must be proved for a conviction of burglary." By this concession, defendants correctly recognize that burglary and theft have been determined to be separate offenses with different elements. *Cf. State v. Edwards,* 221 Kan. 405, 406-407, 559 P.2d 807 (1977); *State v. Pruitt,* 216 Kan. 103, 106, 531 P.2d 860 (1975).

Based upon a review of K.S.A. 1979 Supp. 21-3108(1)(*c*), K.S.A. 22-3423, and the cases construing them, the trial court properly allowed retrial on the theft charges and, as such, the defendants' convictions should be affirmed because no double jeopardy has occurred.

By implication defendants reject this conclusion and assert that the inquiry must not end there. They contend that 21-3108(2)(*b*) is the critical provision because the only way that the State was able

to provide sufficient evidence upon which to convict them of the theft charges at the second trial was by reference to an earlier alleged burglary at the Hines Farm Center. Since they had already been acquitted of this charge, they could not, in effect, be tried on that evidence again. 21-3108(2)(*b*) has not yet been construed by the Kansas courts.

The Judicial Council describes the purpose of the section as defining "the scope of *res judicata* as it applies when the subsequent prosecution is for a different offense." The illustrative example given in support of this proposition is *Sealfon v. United States*, 332 U.S. 575, 92 L.Ed. 180, 68 S.Ct. 237 (1948), cited in defendants' brief. In *Sealfon*, the defendant was previously acquitted of conspiracy to defraud by presenting false invoices and making false representations to a rationing board. He was later prosecuted for aiding and abetting the uttering of the same false invoices, and the Supreme Court reversed his conviction despite the fact that the offenses were separate and distinct, because the jury had earlier determined a fact necessarily inconsistent with that required to convict the defendant as an aider and abetter.

Other commentary may be found in Spring, *The Effect of Former Prosecutions: Something Old and Something New Under Kan. Stat. Ann. Sec. 21-3108,* 9 Washburn L.J. 179 (1970), where the scope of 21-3108(2)(*b*) as well as (1)(*b*) and (3)(*b*) was stated to be terminations of former proceedings by final order or judgment, thereby incorporating the doctrine of res judicata. Spring continues his discussion as follows:

> "The only distinction between the three res judicata subsections lies in the restriction of the doctrine under 21-3108(2)(b) and 21-3108(3)(b) to final orders or judgments in the former prosecution necessarily requiring determinations of fact inconsistent with facts necessary to a conviction in the subsequent prosecution. In contrast, under 21-3108(1)(b) prior determinations of either fact or law may operate as a bar. The reason for the distinction would appear to be, in the case of 21-3108(2)(b), the complexity of legal issues which may arise when different crimes are involved, as opposed to the case of a prosecution for the same crime on the same facts." 9 Washburn L.J. at 188.

Therefore, we must analyze the language of 21-3108(2)(*b*) to determine whether the defendants' cases fall within it, as both commentaries already referred to above suggest otherwise. Here the different crime was burglary and the original proceedings on the charges were terminated by final judgments, acquittals, but clearly did not require a determination inconsistent with any fact necessary to a theft conviction in the second trial.

A conceivable alternative interpretation is that the retrial on the theft charges after mistrial due to a hung jury is not even a "subsequent prosecution" within the meaning of the statute so that 21-3108(2)(*b*) is not applicable. This is consistent with the view that double jeopardy does not attach in a legal sense where a mistrial is declared due to a hung jury.

Finally, we consider how many categories of 21-3108 may encompass a given case. In other words, are the provisions mutually exclusive? We find 21-3108(1)(*c*) is the relevant section in this action, and we further find that 21-3108(2)(*b*) is not applicable. Defendants' arguments therefore are without merit.

Defendants' real complaints are that the State improperly introduced evidence (*e.g.*, crowbars) of, or at least improperly alluded to, a burglary of the Hines Farm Center for which defendants had already been acquitted. They argue that in this case there could be no theft without burglary, nor any burglary without the intent to commit theft. They further contend that the only critical decision facing the jury was who committed the unlawful acts and if an ultimate fact in both cases was resolved in the first trial in defendants' favor, it may not be relitigated, relying on *Ashe v. Swenson*, 397 U.S. 436, 25 L.Ed.2d 469, 90 S.Ct. 1189 (1970), and *United States v. Kramer*, 289 F.2d 909 (2nd Cir. 1961) for support. *Ashe v. Swenson* espoused the "collateral estoppel" doctrine and is distinguishable because it involved multiple prosecutions for an alleged robbery of several victims:

" 'Collateral estoppel' . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit . . . .

"The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' *Sealfon v. United States*, 332 U.S. 575, 579. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal." *Ashe v. Swenson*, 397 U.S. 443-444.

The difficult task, however, is analyzing the general verdicts rendered by the jury in the first trial. Who can successfully unravel the thought processes and state of mind of the jurors to interpret the meaning of their general verdicts? For example, the State argues that the jury in the first trial might have believed the defendants did not enter the building with intent to steal, but formed the intent after entering. Moreover, Kansas recognizes inconsistent verdicts. *State v. Shultz,* 225 Kan. 135, 587 P.2d 901 (1978).

Under the facts of this case, we find that where the burglary and theft arose out of the same incident, were charged as separate counts in the same information, and the trial thereon resulted in acquittals on the charge of burglary and properly authorized mistrials on the theft counts, retrial on the theft counts does not constitute a subsequent prosecution for theft under K.S.A. 1979 Supp. 21-3108(2)(*b*). Rather, the retrial is permitted under 21-3108(1)(*c*) and double jeopardy is not a bar to prosecution. This is so even though evidence used in the original prosecution of burglary is introduced in the retrial, so long as the evidence is used only to support the contention that the property which is the subject matter of the theft charges was removed from the possession of the owner without his permission.

The appeal in case No. 50,449, the habeas corpus appeal, is now moot and dismissed. Convictions are affirmed in case No. 50,795.