Scott Hutton, *Appellant*, v. Ethyl L. Hutton, Neil A. Hutton, Joan Rice, Carolyn Kay Hutton, a minor, and Ethyl L. Hutton as mother and natural guardian of the minor defendant, Carolyn Kay Hutton, and Neil A. Hutton, as administrator of the estate of Clarence A. Hutton, deceased, *Appellees.*

No. 41,294

Eva Hutton White, *Appellant*, v. Ethyl L. Hutton, Neil A. Hutton, Joan Rice, Carolyn Kay Hutton, a minor, and Ethyl L. Hutton as mother and natural guardian of the minor defendant, Carolyn Kay Hutton, and Neil A. Hutton, as administrator of the estate of Clarence A. Hutton, deceased, *Appellees.*

(337 P. 2d 635)

Opinion filed April 11, 1959.

*George Barrett*, of Pratt, argued the cause, and *Richard Barrett*, of Pratt, was with him on the briefs for the appellants.

*John A. Etling*, of Kinsley, argued the cause, and *W. N. Beezley*, of Kinsley, was with him on the briefs for the appellees.

The opinion of the court was delivered by

Price, J.: These appeals arise out of quiet-title actions which were consolidated for purposes of trial in the court below. The questions involved are identical and the cases will be treated as one appeal. Judgment was for defendants and plaintiffs have appealed.

The primary questions concern whether certain deeds were delivered to the grantee and whether an attorney who prepared them was competent to testify concerning their execution and delivery, all as will be developed.

W. A. Hutton, hereafter referred to as Mr. Hutton, was the owner of a section of land in Ford County and three lots in the town of Bucklin. He and his wife, Viola, were the parents of three children, Scott Hutton, Eva Hutton White and Clarence A. Hutton. He was desirous of making some sort of disposition of his real estate, and on August 26, 1950, he and his wife, accompanied by their three children, went to the office of Harry A. Waite, an attorney in Dodge City. Mr. Hutton, in the presence of the other members of his family, told Mr. Waite that he wanted to deed his land to his children; that he and his wife wanted the income from the land as long as either of them lived, and that he did not want the deeds to be recorded. Mr. Waite suggested that deeds reserving a life estate be executed, but Mr. Hutton did not want that "complication" to be in the deeds. He indicated that he wanted to avoid "trouble" that an acquaintance of his had had in a similar situation.

Mr. Waite explained to Mr. Hutton and the other members of the family the necessity of delivery of a deed in order to insure its validity and suggested the execution of a "receipt" in connection with the deeds, it already having been stated by Mr. Hutton that he wanted to keep the deeds in his possession. All of this discussion was had with all five of the Huttons there in Mr. Waite's office. Mr. Hutton then told Mr. Waite to "go ahead and do it."

In the presence of all parties, and using descriptions given by them, Mr. Waite prepared four warranty deeds. One conveyed a quarter section to the son Scott; the second conveyed a quarter section to the son Clarence; the third conveyed a quarter section and the three lots to the daughter Eva, and the fourth conveyed a quarter section to Scott, Clarence and Eva, jointly. The deeds contained no reservations, but it was understood and agreed among all parties that Mr. Hutton and his wife were to have the use, occupancy and income from all of the property as long as either of them should live. Each of the deeds was executed and acknowledged by Mr. Hutton and his wife there in the office in the presence of all parties.

Pursuant to the discussion and understanding among all parties, Mr. Waite prepared four identical receipts. Each of these was signed by each of the three children, and this receipt reads:

"Receipt.

"This Is to Acknowledge the receipt of the following described deeds of conveyance by the persons whose names are respectively set opposite the land descriptions:

| | |
|---|---|
| Northeast of 14-29-22 | Scott Hutton |
| Northwest of 14-29-22 | Clarence Hutton |
| Southwest of 14-29-22 | Eva Hutton White |
| Lots 13, 14 and 15, | |
| Block 35, Bucklin, Kansas | |

and we further acknowledge that we have received, jointly, a deed of conveyance to the Southeast Quarter of Section 14, Township 29, Range 22, all situate in Ford County, Kansas.

"We understand these deeds will be redelivered to us upon the death of the survivor of our father and mother, W. A. Hutton and Viola Hutton.

"s/s Eva Hutton White
Clarence A. Hutton
Scott Hutton

"Witness:
(s) Harry A. Waite"

The receipts and deeds were on the table in Mr. Waite's office and were passed around for all to see. Each of the children retained a receipt, and the other one, together with the four deeds, was handed to Mr. Hutton. Their business being completed, the parties left.

During the next five years nothing further transpired and the deeds and the one receipt remained in Mr. Hutton's possession.

Only July 8, 1955, however, the son Clarence died intestate, leaving his widow, Ethyl L. Hutton, and three children, Neil A. Hutton, Joan Rice and Carolyn Kay Hutton, as his heirs-at-law.

Following the death of Clarence, Mr. Hutton went to Mr. Waite's office and apparently was "concerned" whether Clarence's death would prejudice the lifetime use of the property by him (Mr. Hutton) and his wife. Mr. Waite assured him that their rights to the use, occupancy and profits from the land would not be disturbed, and that the "family agreement" would be honored. Mr. Hutton inquired if he could execute new deeds, but was advised that he could not do so because "that matter had been fixed in August of 1950 and there was nothing he could do about it."

Mr. Hutton apparently was not satisfied with this advice and consulted with Barrett & Barrett, attorneys, of Pratt. On September 27, 1955, the two deeds of August 26, 1950, in which Clarence was a grantee, were destroyed by Mr. Hutton in the office of Barrett & Barrett, and on that day he and his wife executed new deeds, one naming the son Scott as grantee of the quarter section previously deeded to Scott, Clarence and Eva, jointly, and the

other naming the daughter Eva as grantee of the quarter section previously deeded to Clarence. In other words, the two deeds of August 26, 1950, in which Clarence was a grantee were destroyed and new deeds were executed conveying the land previously deeded to Clarence to the two surviving children of Mr. and Mrs. Hutton.

Thereafter Scott and Eva instituted these two actions against the heirs-at-law of Clarence and the administrator of his estate to quiet their title to the lands deeded to them on September 27, 1955.

The defendants jointly filed answers and cross-petitions setting up the deeds of August 26, 1950, and prayed for a decree quieting and confirming their title to the lands conveyed to Clarence, subject to the right of Mr. Hutton and his wife to the lifetime use of the property.

Plaintiffs, by way of reply, denied that there had been an effective delivery of the deeds of August 26, 1950.

The precise question in issue, therefore, was whether there had been an effective delivery to Clarence of the two deeds of August 26, 1950, and whether title then vested in him.

Most of the evidence in behalf of defendants (who were determined to have the burden of proof) consisted of the oral testimony of Mr. Waite, while plaintiffs' evidence consisted of the oral testimony of Scott, Eva and Mr. Hutton.

At the conclusion of the trial the court rendered findings of fact the substance of which was as heretofore related. The "key" findings are as follow:

"VIII.

"W. A. Hutton and Viola Hutton, his wife, executed and acknowledged all the deeds as prepared by Mr. Waite and mentioned in finding 'VI', and the children, Scott Hutton, Eva Hutton White, and Clarence Hutton, signed the four receipts mentioned and referred to in finding 'VII'. These instruments were executed in the office of Harry A. Waite, on August 26, 1950, as a part of the same transaction. Each child took one receipt and one was left with the deeds. It was then the intention of the said W. A. Hutton and Viola Hutton that said deeds should be then effective as a present conveyance of the real estate described in said deeds, and said conveyance of the real estate described in said deeds, and said conveyances were accepted by the grantees. Plaintiffs had knowledge of these facts on August 26, 1950.

"IX.

"W. A. Hutton and Viola Hutton, and their three children, agreed, orally, that said W. A. Hutton and Viola Hutton and the survivor of them should have, in effect, a life estate in the lands but this reservation was not put into the deeds on request of W. A. Hutton, the latter saying it would not be necessary, that he had confidence in his children, and that the deeds would not be recorded and therefore it was a complication that needn't be put into the deed.

"Clarence Hutton respected this oral agreement in his lifetime and his heirs have respected it since his death, and his said heirs have confirmed said agreement and are willing that the court should confirm it, and give it effect."

In harmony with these findings, the court held there was a valid and effective constructive delivery of the deeds in question and quieted title in the heirs of Clarence to the land deeded to him, subject to a life estate in the same in Mr. Hutton and his wife, parents of Clarence. Judgment was rendered accordingly and, post-trial motions being overruled, plaintiffs have appealed.

As stated previously, the decisive questions in this case concern the competency of Mr. Waite to testify about the transactions in his office on August 26, 1950, and whether his testimony, if properly admitted, together with other evidence, established a valid and effective constructive delivery of the two deeds to Clarence on that date.

After these quiet-title actions were filed Mr. Waite represented the defendant heirs-at-law of Clarence and filed answers and cross-petitions on their behalf, but withdrew as counsel prior to trial. It is vigorously contended by plaintiffs that he was guilty of a breach of professional ethics in representing defendants (*Wilson v. Wahl,* 182 Kan. 532, 322 P. 2d 804), and that even though he withdrew as counsel prior to trial he was incompetent to testify because of our statute (G. S. 1949, 60-2805, *Fourth*), which provides that an attorney shall be incompetent to testify concerning any communications made to him by his client in that relation, or his advice thereon, without the client's consent. In other words, it is contended that statements made to him by Mr. Hutton on the date in question, and his advice thereon, were privileged communications.

In view of Mr. Waite's subsequent withdrawal as counsel, matters concerning the propriety of his representing defendants in the preliminary stages of this case are not before us and we express no opinion thereon.

Further, we believe that plaintiffs are in error in contending that the conversation and transactions between Mr. Hutton and Mr. Waite on the date in question constituted "privileged communications" within the meaning of the rule. The facts of this case do not warrant an extended discussion of the authorities dealing with the subject. In the recent case of *Cranston v. Stewart,* 184 Kan. 99, 334 P. 2d 337, it was held that in order for a communication from a client to his attorney to be confidential and to impose upon the attorney the duty of not disclosing the same, it must be of a confi-

dential character and so regarded by the client at the time, and must relate to a matter which in its nature is private and properly the subject of confidential disclosure. In *Sparks v. Sparks*, 51 Kan. 195, 32 Pac. 892, it was held that communications made to an attorney who was acting for both parties, and made in the presence of both parties, cannot be regarded as confidential and privileged. In 97 C. J. S., Witnesses, § 281, p. 795, it is said that the testimony of an attorney as to a transaction in which two or more parties consult him for their mutual benefit is not privileged in an action between such parties or their representatives involving such transaction. In 58 Am. Jur., Witnesses, § 492, p. 275, it is said that as a general proposition if the client chooses to make or receive his communication in the presence and hearing of third persons it ceases to be confidential and is not entitled to the protection afforded by the rule, and that the very nature of the transaction and the circumstances surrounding it are inconsistent with the notion that the communication was ever intended to be confidential. See also the annotation on the subject of "attorney-client privilege as applied to communications in presence of two or more persons interested in the subject matter to which the communications relate," at 141 A. L. R. 553.

The facts and circumstances of the meeting in Mr. Waite's office on August 26, 1950, have been related. Insofar as the parties are concerned, statements by Mr. Hutton, and Mr. Waite's advice thereon, were not of a confidential nature and did not amount to privileged communications. Clarence was present, together with his mother, brother and sister. Anything that was said, and everything that was done, was said and done in the presence of all, and the very nature of what was said and done in the presence of all parties is inconsistent with the idea that the transaction was of a confidential nature and therefore privileged. Without further discussion, we hold that the trial court did not err in overruling plaintiffs' objections to the competency of Mr. Waite to testify.

This brings us to the question whether there was a valid and effective constructive delivery of the two deeds to Clarence as found by the trial court, and in this connection we likewise are of the opinion the facts and circumstances of the case do not call for an extended discussion of the authorities dealing with the matter.

In the main, plaintiffs contend for application of the rule that where one who has executed a deed retains it in his own possession with the intention that it shall become operative upon his death,

no conveyance is effected because no delivery was made, and direct our attention to *Young v. McWilliams,* 75 Kan. 243, 89 Pac. 12; *Hush v. Reeder,* 150 Kan. 567, 95 P. 2d 313, and *In re Estate of Hulteen,* 170 Kan. 515, 227 P. 2d 112. Concededly, the firmly-established rule is that in order for a deed to operate as a valid transfer of title it must be delivered, and that delivery is largely a matter of the grantor's intention to divest himself of title as shown by all of the surrounding facts and circumstances.

The facts and circumstances surrounding the execution and delivery of the two deeds to Clarence have been related. It is clear these deeds, as well as those to the other two children, were the result of an agreement and understanding among the elder Huttons and their three children. It is true they contained no reservations of a life estate, and it also is true that following their execution Mr. Hutton retained them in his possession. But, it is equally true—in fact it was stipulated at the trial—that receipts were prepared and signed by each of the three grantees. These receipts acknowledged *receipt* of the deeds in question and contained the statement that the grantees understood the deeds would be *redelivered* to them upon the death of their parents. Under the circumstances, there can be no question as to the identity of the person or persons *from whom* the deeds were received—Mr. Hutton and his wife. Any other construction of the receipts would do violence to and contradict the very language contained in them. This fact, coupled with the other facts and circumstances surrounding the entire transactions of August 26, 1950, fully supports the trial court's finding that on that date there was a valid and effective constructive delivery of the two deeds to Clarence.

In view of our holding, other matters argued by plaintiffs are immaterial and require no discussion. We find no error in the record and the judgment in each case is affirmed.