(691 P.2d 1316)
No. 56,320

STATE OF KANSAS, *Plaintiff-Appellee,* v. JOHNNY RAY MAXWELL, *Defendant-Appellant.*

Opinion filed December 14, 1984.

*Roger L. Falk,* of O'Hara, Busch, Johnson & Falk, of Wichita, for the appellant.

*Kimberly Gee Vines,* assistant district attorney, *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before REES, P.J., MEYER, J., and JOHN W. BROOKENS, District Judge Retired, Assigned.

MEYER, J.: This is an appeal by Johnny Ray Maxwell (defendant) from a jury trial finding him guilty of one count of the sale of marijuana (K.S.A. 1983 Supp. 65-4127b[b][3] and K.S.A. 1983 Supp. 65-4105[d]).

Defendant contends several errors occurred at the trial court level. Central to defendant's charges of error are alleged conversations made while defendant, Donnette Thomas, and Mi-

chael Thomas were represented by common counsel. Later, defendant obtained new counsel who represented him at trial.

Defendant claims that while all three parties were discussing the case with their original counsel, Donnette Thomas and Michael Thomas, on separate occasions, stated that defendant was not their usual supplier of marijuana and that the night defendant was arrested was the first time they had purchased any marijuana from him. At trial, both Donnette and Michael Thomas testified that defendant was their principal source of marijuana and had supplied it to them on previous occasions.

After Donnette so testified, defendant sought to introduce her prior inconsistent statement which had been made to the parties' original counsel.

Defendant argues that if there was an attorney-client privilege protecting the statement Donnette Thomas made to their original common counsel, it was later waived. Defendant claims this waiver occurred upon disclosure of this information by original counsel to the assistant district attorney. The trial court found that such disclosure by the attorney did *not* waive the attorney-client privilege held by Donnette Thomas and overruled defense counsel's request to impeach the witness by use of this earlier statement.

K.S.A. 60-426 sets forth the attorney-client privilege and the exceptions thereto. The general rule may be summarized as follows: (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived. See 8 Wigmore on Evidence § 2292 (McNaughton rev. 1961).

The rule has always been that communications between attorney and client are privileged when made in professional confidence. Communications not made in such confidence are not so privileged. McCormick on Evidence § 91 (2d ed. 1972); 8 Wigmore on Evidence § 2311. In the case at bar, Donnette and Michael Thomas allegedly made prior statements to their attorney inconsistent with their testimony at trial.

We will first consider whether original counsel's subsequent disclosure to the district attorney can be said to have waived his

clients' privilege. Certainly the answer is no. The privilege belongs to the *client*. K.S.A. 60-426(a); *State v. Wilkins*, 9 Kan. App. 2d 331, 333, 676 P.2d 159 (1984). Only the *client* can waive the privilege. When information is disclosed within the confines of the attorney-client relationship, this imposes upon the attorney a general duty not to disclose this information. *Cranston v. Stewart*, 184 Kan. 99, 334 P.2d 337 (1959). See also *Hutton v. Hutton*, 184 Kan. 560, 337 P.2d 635 (1959); *Fisher v. Mr. Harold's Hair Lab, Inc.*, 215 Kan. 515, 519, 527 P.2d 1026 (1974). Accordingly, if an attorney *violates* his duty of confidentiality, this cannot be said to waive his client's privilege. This principle has been codified in K.S.A. 60-426(a)(3)(iii).

Defendant argues, however, that the communication involved falls within the exception to the attorney-client privilege provided in K.S.A. 60-426(b)(5). This exception is only applicable when there is an action *between the clients*. The case at bar is a suit by the State of Kansas against defendant. Donnette and Michael Thomas *are not* parties to this lawsuit; therefore, this exception is inapplicable. Defendant attempts to circumvent the clear statutory language, however, by arguing that, although Donnette and Michael Thomas are not defendant's adversaries, they are openly hostile and antagonistic, and that their interests are, in effect, aligned with the State. In light of the unambiguous statutory language, this argument is not persuasive.

It is next contended that because defendant was present at the time Donnette and Michael Thomas made disclosures to counsel, this constitutes a waiver by the Thomases of their attorney-client privilege. The trial court found the presence of the defendant, when all three persons were being represented by the same counsel, did not prevent the meeting from being confidential and thus did not waive the attorney-client privilege. We agree.

At the time Donnette and Michael Thomas communicated to their original counsel, they *and* defendant were his clients. Where two or more persons employ an attorney as their common attorney, their communications to him in the presence of each other are regarded as confidential so far as strangers to the conference are concerned. Annot., 141 A.L.R. 553, 562. When a controversy arises between *third persons* and the several clients, communications made by the clients to their common attorney

are entitled to the protection from disclosure which the attorney-client privilege affords. 81 Am. Jur. 2d, Witnesses § 189.

The rule goes further and provides that where several persons employ an attorney and a third party seeks to have communications made therein disclosed, none of the several persons—not even a majority—can waive this privilege. 81 Am. Jur. 2d, Witnesses § 189. These rules are based on a "joint defense privilege" which extends the attorney-client privilege to communications made in the course of joint defense activities. Where two or more persons jointly consult an attorney concerning mutual concerns, their confidential communications with the attorney, although known to each other, will be privileged in controversies of either or both of the clients with the outside world. *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 21 (N.D. Ill. 1980). See *United States v. McPartlin*, 595 F.2d 1321 (7th Cir.), *cert. denied* 444 U.S. 833 (1979); *United States v. Bigos*, 459 F.2d 639 (1st Cir.), *cert. denied* 409 U.S. 847 (1972); *International Bro. of Teamsters, Etc. v. Hatas*, 287 Ala. 344, 252 So. 2d 7 (1971); *People v. Kor*, 129 Cal. App. 2d 436, 277 P.2d 94 (1954).

We next address whether the original counsel's disclosures to defendant's present counsel waived the attorney-client privilege held by the Thomases. As stated above, when Donnette and Michael Thomas communicated to their original counsel, they did so in the course of their confidential attorney-client relationship. There is no evidence proving otherwise. When original counsel told defendant's trial counsel certain information which had been told to him by the Thomases, he breached his attorney-client relationship as there had been no consent to such disclosure by the Thomases. In K.S.A. 60-426(a), it is provided that a client has a privilege to prevent a witness from disclosing a communication the client had with his or her attorney if the communication "came to the knowledge of such witness . . . (iii) as a result of the breach of the lawyer-client relationship."

It is hard to imagine a situation more closely applicable under this statute than the facts of the present case. Because defendant's trial counsel received his information from defendant's original counsel and thus through a breach of the attorney-client privilege between original counsel and the Thomases, it cannot be said it was error for the trial court to refuse to allow defend-

ant's present counsel to withdraw and to testify as to this communication or to overrule defendant's motion for mistrial.

Furthermore, federal courts have endorsed the joint defense exception to the general rule that no privilege attaches to communications made in the presence of third parties. The disclosure of privileged information by an attorney to counsel of actual or potential codefendants does not constitute a waiver of the attorney-client privilege. See, *e.g., Wilson P. Abraham Const. v. Armco Steel Corp.,* 559 F.2d 250, 253 (5th Cir. 1977); *Hunydee v. United States,* 355 F.2d 183 (9th Cir. 1965); *Continental Oil Company v. United States,* 330 F.2d 347 (9th Cir. 1964); *Matter of Grand Jury Subpoena, Etc., Nov. 16, 1974,* 406 F. Supp. 381 (S.D.N.Y. 1975).

The joint defense privilege encompasses shared communications "to the extent that they concern common issues and are intended to facilitate representation in possible subsequent proceedings." *Hunydee,* 355 F.2d at 185. It is also essential that the codefendants have exchanged the information in confidence, "not . . . for the purpose of allowing unlimited publication and use, but rather . . . for the limited purpose of assisting in their common cause." *Wilson P. Abraham Const.,* 559 F.2d at 253.

It has been established that the joint meetings undertaken between Donnette Thomas, Michael Thomas, defendant, and their original common counsel were confidential, concerned common issues, and were intended to facilitate representation in proceedings brought by the State of Kansas against them. The assurance of confidentiality is as important and appropriate in a joint defense of defendants whose attorneys are separately retained as it is where codefendants have engaged common counsel. *Matter of Grand Jury Subpoena,* 406 F. Supp. at 387-88. We can see how no policy served by the privilege is disserved by recognition of the joint defense privilege.

The district court properly construed, and applied, the law relative to the attorney-client privilege.

Defendant's fourth contention of error relates to the admission of "other crimes" evidence under K.S.A. 60-455. At trial, Michael Thomas testified that he had purchased marijuana from defendant on eight to ten prior occasions. The trial court overruled defendant's objection and allowed the testimony to remain.

Defendant's argument is that the admission of the testimony was not properly allowed under K.S.A. 60-455. Defendant goes to great lengths to illustrate the inadmissibility of the testimony under this statute. The State, on the other hand, argues the trial court erroneously characterized the testimony as K.S.A. 60-455 type evidence, and that, regardless of its admissibility under 60-455, it was admissible independent of the statute.

The Kansas Supreme Court has addressed a case closely analogous to the instant case. In *State v. Solem*, 220 Kan. 471, 552 P.2d 951 (1976), the court found that evidence of prior offers by the defendant therein to sell drugs to an undercover agent was relevant, material, and admissible as evidence of the defendant's ultimate sale of the drugs despite the fact the questioned evidence related to prior crimes. *Solem*, 220 Kan. at 476. The court stated that evidence of an independent offense may possess evidentiary value to show commission of the offense in question and may be admissible independent of the provisions in K.S.A. 60-455. *Solem*, 220 Kan. at 476. Evidence which has a direct bearing on, and a relation to, the commission of an offense is admissible without a limiting instruction; and is not rendered inadmissible because it may disclose other or independent offenses. *Solem*, 220 Kan. at 476.

The *Solem* case has been cited with approval in this context in *State v. Glazer*, 223 Kan. 351, 360, 574 P.2d 942 (1978); and *State v. Holt*, 228 Kan. 16, 21, 612 P.2d 570 (1980).

In the case at bar, the State sought to prove the defendant came to sell drugs, not to buy them. Michael Thomas' testimony was that he had purchased drugs from the defendant on eight to ten prior occasions, and that the defendant was always the seller, never the buyer. These statements disclose an ongoing series of contacts related to drugs between the Thomases and defendant. Michael Thomas' statements tend to prove the existence of those contacts and that those contacts eventually led to the transaction at issue. As in *Solem*, the defendant's prior offers here to sell marijuana to the Thomases can be seen as relevant and material to his ultimate sale of drugs to the agent. Merely because this testimony relates to prior crimes (K.S.A. 1983 Supp. 65-4127b(b)(3): sale of marijuana), this does not prohibit its introduction now to show commission of the offense charged. *Solem*, 220 Kan. at 476.

In sum, admission or exclusion of evidence is within the sound discretion of the trial court. *State v. Mack,* 228 Kan. 83, 87, 612 P.2d 158 (1980); *State v. Reed,* 226 Kan. 519, 524, 601 P.2d 1125 (1979). The testimony was relevant and material. The question of whether defendant was there to sell marijuana was a material issue which tends to be proved by evidence of past sales of drugs by defendant to the Thomases. Therefore, it cannot be said the trial court abused its discretion.

The trial court, however, admitted the evidence under K.S.A. 60-455. Assuming this was an erroneous admission under 60-455, based on *Solem,* supra, the evidence was nevertheless independently admissible. It is a standard rule of law that the judgment of a trial court, if correct, will be upheld, even though the court may have relied upon a wrong ground or assigned an erroneous reason for its decision. *State v. Durst,* 235 Kan. 62, 69, 678 P.2d 1126 (1984); *Farmers State Bank v. Cooper,* 227 Kan. 547, Syl. ¶ 10, 608 P.2d 929 (1980). We therefore conclude the trial court's ruling was correct.

The defendant next contends the trial court erred in allowing the State to introduce certain rebuttal evidence. Defendant testified that he came to see the Thomases to *buy,* not to sell, marijuana. Michael Thomas was then called back to the stand as a rebuttal witness to testify that the story told by defendant was not true and that, since his arrest, the defendant had approached Michael Thomas asking Thomas to "take full responsibility for the sale." The trial court admitted this evidence over defendant's objection as proper rebuttal evidence.

In *State v. Weigel,* 228 Kan. 194, 200, 612 P.2d 636 (1980), the court stated the following:

"Rebuttal evidence is that which contradicts evidence introduced by an opposing party. It may tend to corroborate evidence of a party who first presented evidence on the particular issue, or it may refute or deny some affirmative fact which an opposing party has attempted to prove. It may be used to explain, repel, counteract or disprove testimony or facts introduced by or on behalf of the adverse party. . . . The use and extent of rebuttal rests in the sound discretion of the trial court and its ruling will not be reversed unless it appears the discretion has been abused to a party's prejudice." (Citing *State v. Lovelace,* 227 Kan. 348, Syl. ¶ 7, 607 P.2d 49 [1980]; and *State v. Shultz,* 225 Kan. 135, 138, 587 P.2d 901 [1978].)

Defendant testified he came to the Thomases to *buy* marijuana. Michael Thomas was called to rebut these statements with

evidence defendant had admitted to him he was there to *sell.* Thomas further testified that defendant wanted Thomas to take responsibility for the crime. This evidence is proper rebuttal evidence under the definition above.

The defendant next complains the trial court erred in its instructions to the jury in the following three areas:

a) Instructions to the jury regarding the burden of proof.

The trial court instructed the jury as follows:

"You should evaluate the evidence admitted in this case and determine the innocence or guilt of the defendant entirely in accordance with these instructions."

The defendant complains of the use of the word "innocence" in the instruction, arguing that innocence is never an issue in a criminal case, in that innocence is presumed. This is a correct statement of the law. Defendant does not state specifically in his argument that it is the above quoted instruction's use of the word "innocence" which is objectionable. The trial court's instruction, however, is taken almost verbatim from PIK Crim. 52.02. PIK Crim. 52.02 was specifically approved by the Kansas Supreme Court in *State v. White,* 213 Kan. 276, 280-81, 515 P.2d 1081 (1973). The 1983 Supplement to PIK Crim. 2d 52.02 does replace the statement, "You should . . . determine the innocence or guilt of the defendant . . ." with the sentence, "You should . . . determine whether the defendant is guilty or not guilty . . . ." As this sentence is the only change in the instruction, it will be assumed this is the basis for defendant's argument. Pattern Instructions, however, are merely *guides;* they are not mandatory and need not be used verbatim. Although the PIK Committee changed the sentence in question, this does not make the prior wording of the instruction extinct. On the contrary, although the present wording of PIK Crim. 2d 52.02 (1983 Supp.) may be preferred, it still remains that the Kansas Supreme Court has previously approved PIK Crim. 52.02. Accordingly, use of this instruction was not erroneous.

b) Instructions to the jury regarding the definition of sale.

The trial court's instruction on "sale" is identical to PIK Crim. 2d 67.13-A, and was approved by the Kansas Supreme Court in *State v. Griffin,* 221 Kan. 83, 85, 558 P.2d 90 (1976); and *State v. Nix,* 215 Kan. 880, 529 P.2d 147 (1974). Therefore, it cannot be said the trial court erred in giving this instruction.

c) Refusal to give an instruction on the crime of possession of marijuana.

The defendant argues it was error for the trial court to refuse to give an instruction on the crime of possession of marijuana as a lesser included offense of the sale of marijuana.

Under *State v. Woods*, 214 Kan. 739, 522 P.2d 967 (1974), and *State v. Greenlee*, 228 Kan. 712, 722, 620 P.2d 1132 (1980), our Supreme Court has held that possession of marijuana is not a lesser included offense of the sale of marijuana. Defendant concedes the validity and applicability of these two opinions, but attempts to distinguish these cases by showing that, in the instant case, possession of marijuana was a factually related lesser included offense because both defendant and a detective admit defendant had marijuana in his possession.

In *State v. Arnold*, 223 Kan. 715, 717, 576 P.2d 651 (1978), our Supreme Court reversed the Court of Appeals decision (*State v. Arnold*, 1 Kan. App. 2d 642, 573 P.2d 1087 [1977]), wherein the Court of Appeals had held:

"The duty under K.S.A. 21-3107(3) to instruct on lesser crimes . . . arises . . . when there is evidence upon which the accused might reasonably and properly be convicted of the lesser offense." Syl. ¶ 2.

"Under K.S.A. 21-3107(2)(d) a defendant may be convicted of a lesser crime . . . if it is one factually charged in the information . . . ." Syl. ¶ 4.

By reversing the Court of Appeals holding, the Supreme Court ruled that factually related lesser offenses were not, and are not, recognized in Kansas. *Arnold*, 223 Kan. at 717. We do not see that *State v. Long*, 234 Kan. 580, 587-92, 675 P.2d 832 (1984), compels a different conclusion.

The defendant contends his sentence was contrary to the constitutional prohibition on cruel and unusual punishment, yet at the same time concedes the sentence was within the statutory limits. Defendant argues, however, that the trial court failed to follow certain recommendations given and that this constitutes cruel and unusual punishment, or, in the alternative, constitutes an abuse of discretion.

The defendant was sentenced under the Habitual Criminal Act (K.S.A. 1983 Supp. 21-4504) to a term of 7-10 years. Kansas courts have repeatedly upheld the constitutionality of the Habitual Criminal Act. See *Clinton v. State*, 210 Kan. 327, 328-29, 502 P.2d 852 (1972); *State v. Caldrone*, 205 Kan. 828, 473 P.2d 66

(1970), *cert. denied* 401 U.S. 916 (1971). Under this act, a court may fix a minimum sentence of not more than twice the greatest minimum sentence authorized by K.S.A. 1983 Supp. 21-4501, and may not fix a maximum sentence of more than twice the greatest maximum sentence so authorized for the crime. As the defendant was convicted of a class C felony, the greatest minimum sentence allowed could have been twice the 3-5 year minimum, or 6-10 years; and the greatest maximum could have been twice the 10-20 year maximum, or 20-40 years. Under these circumstances, the defendant's 7-10 year sentence is clearly within the statutory guidelines and is far below the maximum sentence which could have been imposed by the court.

Generally, Kansas courts will not interfere with a sentence handed down by a trial court which is within the permissible statutory limits. *State v. Steward,* 219 Kan. 256, 270, 547 P.2d 773 (1976); *State v. Pettay,* 216 Kan. 555, Syl. ¶ 4, 532 P.2d 1289 (1975). When a sentence is fixed by the trial court within the permissible limits of the applicable statutes, the sentence is not erroneous and in the absence of special circumstances showing an abuse of discretion, will not be disturbed on appeal. *State v. Crispin,* 234 Kan. 104, 671 P.2d 502 (1983); *State v. Reeves,* 232 Kan. 143, 652 P.2d 713 (1982); *State v. Buckner,* 223 Kan. 138, 574 P.2d 918 (1977). Normally a trial court has not abused its discretion when it follows the mandates of K.S.A. 21-4601 and K.S.A. 21-4606 in sentencing a defendant. *State v. Reeves,* 232 Kan. 143. No such showing has been presented here; therefore, it cannot be said the trial court abused its discretion.

The defendant's final argument is that the trial court judge, Judge Owen Ballinger, should have recused himself from hearing this case because his son works for the Sedgwick County District Attorney. The defendant relies on *State v. Logan,* 9 Kan. App. 2d 353, 678 P.2d 181 (1984) as support. In *Logan,* the issue of Judge Ballinger's disqualification from hearing a case because of his son's contacts with the district attorney's office was raised and this court found there had been no impropriety, although we recommended that Ballinger recuse himself under similar circumstances in the future. *Logan,* 9 Kan. App. 2d at 355. However, on appeal to our Supreme Court, it was held Judge Ballinger need not recuse himself from criminal cases merely because his son works for the district attorney's office. *State v.*

*Logan,* 236 Kan. 79, 689 P.2d 778 (1984). Therefore, defendant's argument is without merit.

Affirmed.

REES, J., concurring: On the issues raised and as they are argued to us, I concur in the result reached by the majority, that is, affirmance of defendant's conviction and sentence.