David BURTON, Plaintiff,

v.

R.J. REYNOLDS TOBACCO CO. and The American Tobacco Co., Defendants.

No. 94–2202–JWL.

United States District Court, D. Kansas.

May 1, 1996.

Kenneth B. McClain, Gregory Leyh, Nicholas E. Mebruer, Humphrey, Farrington & McClain, Independence, MO, for David Burton and Ora Burton.

Roger D. Stanton, Stinson, Mag & Fizzell, P.C., Overland Park, KS, M. Warren McCamish, Williamson & Cubbison, Kansas City, KS, Stanley D. Davis, John C. Noonan, Teresa L. Clark, Stinson, Mag & Fizzell, P.C., Kansas City, MO, Junius C McElveen, Jr., Jones, Day, Reavis & Pogue, Washington, DC, Sydney Bosworth McDole, William E. Marple, Thomas C. Pavlik, Clay Alfred Hartmann, Jones, Day, Reavis & Pogue, Dallas, TX, Stephen J. Kaczynski, Michael A. Nims, Paul G. Crist, Jones, Day, Reavis & Pogue, Cleveland, OH, for R.J. Reynolds Tobacco Co., Inc.

Roger W. Warren, James D. Griffin, James M. Warden, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, KS, Bruce G. Sheffler, James Mirro, Peter K. Eck, Nicholas Booke, Chadbourne & Parke, New York City, for American Tobacco Co.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

This case comes before the court on the plaintiff's motion (Doc. # 214) to compel the defendants to produce certain Council for Tobacco Research ("CTR") special project documents ("Documents") and plaintiff's motion for extension of time to complete discovery (Doc. # 215). The parties have thoroughly briefed the issues and have made evidentiary submissions to support their positions. The court conducted a telephone hearing on the motion to compel on April 19, 1996. For the reasons discussed below, the court denies the motion as to the defendant American Tobacco Co. ("American"), orders an in camera review pursuant to the crime-fraud exception to the attorney client privilege and the work product doctrine of the 33 allegedly privileged documents identified by defendant R.J. Reynolds Co. ("Reynolds"), refers the motion to compel concerning those documents to United States Magistrate Judge Ronald C. Newman to conduct the review and determine whether the documents shall be produced, and grants in part the plaintiff's motion for extension of time to complete discovery.

### II. Facts.

The Tobacco Industry Research Committee ("TIRC") was formed in 1954 by members of the tobacco industry, including the defendants, to provide funding for research on the effects of tobacco use. In 1958, the TIRC changed its name to the CTR. The CTR's Scientific Advisory Board ("SAB"), which is composed of scientists, reviews grant proposals and provides funding to research projects they deem worthy. Between 1965 and 1990, the CTR began conducting its own scientific projects separate from the SAB's grant program under the name special projects.

On September 9, 1995, the plaintiff served the defendants with its Third Request for Documents. Request No. 1 sought all documents relating to the CTR special projects division or program. In their response dated October 11, 1995, the defendants objected to this request because it sought privileged or protected documents and because it sought documents relating to subjects other than those matters at issue here, peripheral vascular disease and the alleged addictive nature of cigarettes. Subject to their objections, both defendants produced what they believe are non-privileged CTR Documents in their possession relating to the conditions they believe are at issue in this case. Defendant American did not withhold any documents because it believes that it does not possess any relevant, privileged CTR documents. Defendant Reynolds provided the plaintiff with a log indicating that it believes 24 CTR Documents were privileged and that nine CTR Documents were partially privileged. Defendant Reynolds provided the plaintiff with redacted copies of the nine allegedly

partially privileged Documents. Defendant Reynolds represents that these Documents are privileged because they consist of communications between Reynolds and its counsel, communications between its counsel and counsel for other tobacco companies, and internal company communications reflecting privileged information. On March 1, 1996, the plaintiff filed a motion to compel the defendants to produce the CTR Documents relevant to his claims. The plaintiff asserts that the impetus for its motion to compel arose from admissions made by another tobacco company's lawyer during a hearing in a separate case.[1]

### III. Discussion.

#### A. Motion to compel.

##### 1. Timeliness of plaintiff's motion.

Defendant Reynolds opposes the plaintiff's motion on procedural as well as substantive grounds. In this case's Scheduling Order dated September 26, 1994, the court stated that

> "Motions to compel discovery with accompanying memoranda and in compliance with D.Kan.Rule 206 and 219 shall be filed and served within 30 days of the default or service of response, answer, or objection which is the subject of the motions, unless the time for the filing of such motions is extended for good cause shown, or the objection to the default, response, answer, or objection shall be waived."

Without question, the plaintiff's motion to compel is out of time under that order, and Defendant Reynolds asks that it be denied on that basis.

■ The district court has wide discretion in its regulation of pretrial matters. *SIL–FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1514 (10th Cir.1990) (citing *Doelle v. Mountain States Tel. & Tel.*, 872 F.2d 942, 947 (10th Cir.1989)). Although the plaintiff's motion to compel is clearly beyond the 30 day limit prescribed in the Scheduling Order, the court concludes that it should exercise its discretion in this instance, in the interests of

justice, to permit the plaintiff to bring this motion. The litigation here involves a still evolving area of the law and the plaintiff raises serious substantive legal issues which the court is extremely reluctant to truncate based solely on its own procedural requirement designed primarily to expedite the orderly progress of garden variety lawsuits. Moreover, the court has been provided no showing that the defendants would be prejudiced by the plaintiff's delay and, in the event the plaintiff's allegations of fraud concerning the CTR Documents should have merit, the likelihood that the discovery would lead to relevant evidence is high. Thus, the plaintiff's motion to compel shall not be deemed to be time barred.

##### 2. Relevance.

The next hurdle for the plaintiff to clear is a showing that the material he seeks is relevant. The plaintiff's claims are based on his assertions that the defendants knew and had a duty to disclose to the public that the nicotine in their cigarettes was addictive, that the defendants knew and had a duty to disclose to the public that their cigarettes are a vasoconstrictor, and that the defendants knew and had a duty to disclose to the public that their cigarettes contributed to the development of peripheral vascular diseases including atherosclerotic peripheral arterial occlusive. Thus, the relevance analysis must focus on whether the information sought bears on whether the defendants knew during the relevant time period what the plaintiff alleges they knew.

■ The court believes that the 33 CTR Documents withheld by Defendant Reynolds would be relevant to this case to the extent the plaintiff could link the documents to a showing that the Defendant Reynolds knew during the relevant time period that nicotine is addictive, that its cigarettes are a vasoconstrictor, or that its cigarettes caused peripheral vascular diseases. *See Jones v. Boeing Co.*, 163 F.R.D. 15, 16 (D.Kan.1995) ("A request for discovery should be considered rel-

---

**1.** The hearing dated January 22, 1996, arose out of a case titled *Sackman v. Liggett Group, Inc.*,

920 F.Supp. 357 (E.D.N.Y.).

evant if there is any possibility that the information sought may be relevant to the subject matter of this action."). By contrast, Defendant American has not withheld any documents as privileged because it claims that it does not possess any CTR Documents which are relevant to the plaintiff's claim. Because the plaintiff has failed to show that Defendant American does possess CTR Documents relevant to his claims, the court denies the plaintiff's motion to compel with respect to Defendant American.

The defendants argue that even if they had disclosed the information the plaintiff alleges they had in their possession, the plaintiff would have continued to smoke cigarettes because by 1952 the plaintiff was, in his mind, addicted to the nicotine contained in the defendants' cigarettes and, therefore, could not stop regardless of what information the defendants disclosed. The court disagrees. It may be one thing to recognize retrospectively, as the plaintiff claims, that he was addicted and thus was powerless to quit smoking based on warnings that tobacco use could be harmful to his health. It is quite something different to have been denied, as plaintiff also claims, the information that nicotine truly is addictive, thus depriving him of the impetus to seek professional assistance to overcome his dilemma. Had the defendants disclosed the information the plaintiff alleges the defendants had in their possession, the court believes that a reasonable jury could credit the proposition that the plaintiff, upon realizing that nicotine was addictive and that he had a high likelihood of contracting peripheral vascular disease from smoking, would, more likely than not, have sought medical attention to help him break his nicotine addiction. Thus, the plaintiff's motion to compel does not fail on relevance grounds.

### 3. Privileges.

#### a. Choice of law.

■ Because this is a civil case and because the claims in this case are based on Kansas law, the court concludes that Kansas law governs the attorney client privilege and joint defense privilege issues. Fed.R.Evid. 501. Application of the work product doctrine, however, is governed by the Federal Rules of Civil Procedure. *In re A.H. Robins Co.*, 107 F.R.D. 2, 8 (D.Kan.1985).

#### b. Attachment of privilege.

Under Kansas law, the attorney client privilege protects communications found by the judge to have been between a lawyer and his or her client in the course of that relationship and in professional confidence. K.S.A. § 60–426(a). The defendants contend that the CTR Documents are protected by the attorney client privilege because they involve communications between themselves and their lawyers in the course of their legal relationship and in professional confidence.

■ In order to be protected by work product immunity, the party asserting the privilege must show (1) that the material is a document or tangible thing, (2) that the material was prepared in anticipation of litigation, and (3) that the material was prepared by or for a party or by or for the party's representative. *Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D.Kan.1995). The defendants contend that the CTR Documents are protected by the work product doctrine because they were prepared in anticipation of litigation.

■ Under Kansas law, the disclosure of privileged information by an attorney to counsel of actual or potential co-defendants does not constitute a waiver of the attorney client privilege based on the joint defense exception to the general rule that no privilege attaches to communications made in the presence of third parties. *State v. Maxwell*, 10 Kan.App.2d 62, 66, 691 P.2d 1316 (1984). The joint defense privilege encompasses shared communications to the extent that they concern common issues and are intended to facilitate representation in possible subsequent proceedings. *Id.* It is also essential that the co-defendants have exchanged the information in confidence, "not ... for the purpose of allowing unlimited publication and use, but rather ... for the limited purpose of assisting in their common cause." *Id.* The defendants contend that the CTR Documents are protected by the joint defense privilege.

■ The plaintiff argues that none of these theories shield the communications from disclosure because the involvement with the CTR Documents by counsel was not in a legal capacity. However, the court finds no support in the plaintiff's submissions for that conclusion. Moreover, based upon the evidence available at this time, the court rejects the plaintiff's sweeping conclusory argument that lawyers and science simply do not mix. As a result, the court concludes that the defendants have made the necessary showing to assert the attorney client privilege, work product immunity, and the joint defense privilege concerning the CTR Documents. *Jones,* 163 F.R.D. at 16–17; K.S.A. § 60–426(a); *Maxwell,* 10 Kan.App.2d at 66.

*c. Waiver.*

■ Intentional disclosure to third parties of privileged information is a waiver of any privilege. *See Monarch Cement Co. v. Lone Star Indus., Inc.,* 132 F.R.D. 558 (D.Kan.1990). The plaintiff contends that the defendants waived any privileges or immunities from disclosure which might have attached to the CTR Documents when they intentionally and knowingly chose to funnel them through the CTR, a third party committed to public disclosure. The defendants argue that the plaintiff has produced no evidence indicating that the CTR Documents were disclosed to CTR employees and have argued that the alleged funneling through the CTR does not constitute a waiver of any asserted privileges because disclosing the CTR Documents to the CTR employees did not make it substantially more likely that the CTR Documents would be disclosed to an adversary. The court agrees with the defendants that, based upon the submissions of the parties, the plaintiff has not met his burden of showing that the defendants waived any privileges.

*4. Crime-fraud exception—in camera review.*

*a. Standard.*

■ During the court's telephone hearing on the plaintiff's motion to compel, plaintiff's counsel took the position that his strongest argument to obtain discovery of the CTR Documents is the so-called crime-fraud exception to the doctrines which otherwise would protect the confidentiality of certain legal communications. The crime-fraud exception's purpose is to assure that the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime. *United States v. Zolin,* 491 U.S. 554, 563, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1989). Under Kansas law, the attorney client privilege does not extend to communications regarding legal services "sought or obtained in order to enable or aid the commission or planning of a crime or tort." K.S.A. § 60–426(b)(1); *Aguinaga v. John Morrell & Co.,* 112 F.R.D. 671, 682 (D.Kan.1986). Tenth Circuit law concerning work product is to the same effect. *See In re Vargas,* 723 F.2d 1461 (10th Cir.1983). While the plaintiff must only make a prima facie showing that a crime or fraud has been perpetrated, the plaintiff may not use as evidence of the crime or fraud the very documents which are sought in discovery. *Aguinaga,* 112 F.R.D. at 682 (citing *In Re A.H. Robins Co., Inc.,* 107 F.R.D. 2, 9 (D.Kan. 1985)).

■ The Kansas Supreme Court has recently addressed this issue in *Wallace Saunders Austin Brown & Enochs, Chartered, v. Louisburg Grain Co.,* 250 Kan. 54, 824 P.2d 933 (1992). That case involved a law firm suing its former client for payment of its legal fees. After the former client confessed judgment, the law firm attempted to execute its judgment on the former client's real estate located in Miami County, Kansas. After receiving a notice of sale from the law firm, the former client's judgment creditors filed a motion to set aside the law firm's writ of execution and deny the law firm's order for sale. Based on the judgment creditors' argument that the law firm's action constituted a collusive and improper attempt to defraud the former client's judgment creditors, the trial court set aside the law firm's writ of execution and set the matter for trial. *Id.* at 57, 824 P.2d 933. After the law firm refused to produce certain documents involving communications between the law firm and the former client based on the attorney client

privilege, the judgment creditors filed a motion to compel the production of those documents based on their allegation that the law firm's suit for attorney fees was fraudulent and, therefore, the crime-fraud exception to the attorney client privilege applied. The Kansas Supreme Court stated that the crime-fraud exception requires that the moving party present a prima facie case to overcome the attorney client privilege. *Id.* at 61, 824 P.2d 933. A prima facie case requires "evidence which, if left unexplained or uncontradicted, would be sufficient to carry the case to the jury and sustain a verdict in favor of the plaintiff on the issue it supports." *Id.*[2]

■■■■ Although Kansas courts have enunciated the requisite burden for the party seeking the application of the crime-fraud exception, no Kansas court has addressed whether the requisite burden for a party seeking an in camera review based on the crime-fraud exception of allegedly privileged documents is any different. In 1989, the United States Supreme Court held, under federal law, that a district court may conduct an in camera review to determine the applicability of the crime-fraud exception if the party requesting such a review makes a showing of a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the documents may reveal evidence to establish that the crime-fraud exception applies. *United States v. Zolin,* 491 U.S. 554, 572, 575–76, 109 S.Ct. 2619, 2632, 2632, 105 L.Ed.2d 469 (1989); *see also Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1551 (10th Cir.1995). This evidentiary standard requires less than what is required

ultimately to overcome the privilege. *Id.* at 572, 109 S.Ct. at 2632.[3]

■■■■ There is a substantial conflict between the *Wallace Saunders* decision and the *Zolin* decision which must be confronted in attempting to determine whether Kansas would adopt the *Zolin*-like relaxed standard for in camera review. The *Wallace Saunders* decision does not permit the moving party to use the documents sought pursuant to the crime-fraud exception to help make the necessary prima facie case. By contrast, *Zolin* permits the moving party to use the documents sought pursuant to the crime-fraud exception to prove the crime-fraud exception after the moving party has made the necessary threshold showing and after the court has conducted an in camera review of the allegedly privilege documents and determined on its own that the documents evidence a basis for application of the crime-fraud exception. The *Wallace Saunders* limitation is grounded in the very words of the statutory privilege: "Such privileges shall not extend (1) to a communication if the judge finds that sufficient evidence, *aside from the communication,* has been introduced to warrant a finding that the legal service was sought or obtained in order to enable or aid the commission or planning of a crime or a tort...." K.S.A. § 60–426(b)(1) (emphasis added). *Zolin,* by contrast, is rooted in federal common law and is not restricted by a comparable legislative pronouncement. Thus, there is no basis to conclude that the Kansas Supreme Court would adopt a more relaxed standard, like *Zolin.* If the disputed communications cannot be considered in determining whether the ex-

---

**2.** Although it is arguable that the Tenth Circuit standard in the work product context is somewhat less stringent in that it requires "prima facie evidence that the allegation of attorney participation in a crime or a fraud has some foundation in fact," *In re A.H. Robins Co.,* 107 F.R.D. 2, 8 (D.Kan.1985), the court will analyze the plaintiff's showing under the Kansas standard because satisfaction of it would, by necessity, also satisfy the Tenth Circuit's standard.

**3.** Whether to conduct an in camera review under federal law is left to the sound discretion of the district court. *Zolin,* 491 U.S. at 572, 575–76, 109 S.Ct. at 2632; *Motley,* 71 F.3d at 1551–52. The court should make its decision in light of the facts and circumstances of the particular case,

including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply. *Id.* When making its decision concerning whether the party opposing the privilege has made the requisite threshold showing to obtain an in camera review, the court may look at any relevant and lawfully obtained evidence that has not been adjudicated to be privileged. *Id.* at 574, 109 S.Ct. at 2632.

ception to the privilege applies and the decision rests on the application of the *Wallace Saunders* prima facie case test to the other existing evidence, then the purpose of an in camera review is not to help satisfy the burden of establishing the exception but, rather, to help determine whether the documents meet the substance of what the party seeking them has averred and whether they are, thus, subject to production as a result. Therefore, the court has applied the *Wallace Saunders* standard, not the relaxed *Zolin* standard, to determine whether the prima facie test has been met and to determine whether or not an in camera review should be ordered.

### b. Evidence.

The plaintiff argues that lawyers for tobacco companies, including the defendants, were used to facilitate the perpetration of a continuing fraud. Specifically, the plaintiff contends that the lawyers for the tobacco companies used the CTR to deceive the public about the health risks associated with smoking. The plaintiff requests that the court review the CTR Documents in camera to determine whether they evidence this deception. In support of its in camera review argument, the plaintiff points to the following evidence: excerpts from the U.S. Food and Drug Administration ("FDA") Special Supplement titled "Nicotine in Cigarettes and Smokeless Tobacco Products is a Drug and These Products are Nicotine Delivery Devices under the Federal Food, Drug, and Cosmetic Act"; two articles published in the Journal of the American Medical Association ("JAMA") entitled "Lawyer Control of the Tobacco Industry's External Research Program," and "Lawyer Control of Internal Scientific Research to Protect Against Products Liability Lawsuits"; a statement from the TIRC entitled "A Frank Statement to the Public by the Makers of Cigarettes"; three letters/memos from Mr. Earnest Pepples, the former vice president and general counsel of the Brown & Williamson Tobacco Company; and the notes from a meeting of the tobacco companies' general counsels. The defendants object to these documents based on

hearsay, authenticity, and relevance grounds, among others.

The court rejects the hearsay and authenticity arguments because under Federal Rule of Evidence 104(a), it is not bound by the rules of evidence on those subjects in determining the existence of a privilege and because it is sufficiently satisfied with the reliability of the proffered FDA, JAMA, and TIRC evidence to conclude that those items of evidence should be considered for this purpose. Those documents are also relevant to the plaintiff's claims.

The defendants also contend that any evidence not lawfully obtained cannot be used by the plaintiff to make his threshold showing for an in camera review. *Zolin,* 491 U.S. at 574, 109 S.Ct. at 2632. The defendants argue that the court should not consider the documents stolen from the Brown & Williamson Tobacco Company, which consist of three letters/memos from Mr. Earnest Pepples and the notes from a meeting of the tobacco companies' general counsels. Although *Zolin* is less than clear concerning the scope of the restriction which it articulates, and although there is no allegation that anyone associated with this plaintiff stole the documents, the court has determined not to consider them here because there is ample evidence to support the plaintiff's position without reference to the purloined documents.

The TIRC's Frank Statement essentially states that the members of the TIRC, which includes the defendants, do not believe that their tobacco products are injurious to the public health and that the TIRC will aid and assist in the research effort concerning all areas of tobacco use and health. The excerpts from the FDA Special Supplement discuss tobacco industry documents which the FDA contends reveal that nicotine is a drug, that consumers of tobacco products smoke cigarettes for the pharmacological effects of nicotine, that nicotine creates physical dependency, that nicotine has addictive properties and that tobacco company researchers and top officials are aware of and understand these facts.[4]

The court believes that the plaintiff has carried his burden to make out a prima facie

---

4. The plaintiff also relies on a declaration from

one of his experts, Dr. Richard Pollay, to support

case of fraud based on the Frank Statement and the excerpts from the FDA's Special Supplement. The Frank Statement clearly indicates that the TIRC/CTR was created to research and disclose to the public the effects of tobacco use on people's health. The excerpts from the FDA's Special Supplement give rise to the inference that the members of the CTR knew during relevant time periods that nicotine was addictive and did not disclose that information to the public, which is in direct conflict with the Frank Statement. Moreover, the members of the CTR's silence on the issue of nicotine being addictive raises the inference, based on the Frank Statement, that the tobacco companies believed that nicotine was not addictive. In other words, this is evidence which, left unexplained or uncontradicted, would be sufficient to support the conclusion that the members of the CTR chose not to disclose information about nicotine being addictive to deliberately mislead the public about the effects of tobacco use. *Wallace Saunders Austin Brown & Enochs, Chartered, v. Louisburg Grain Co.,* 250 Kan. 54, 824 P.2d 933 (1992). As a result, the court deems it necessary to conduct an in camera review of Defendant Reynolds' 33 allegedly privileged CTR Documents to determine whether any of them indicate that the defendants knew during the relevant time period that nicotine was addictive and failed to disclose that information despite the CTR's public representation that it would make such disclosures to the public. The motion to compel (Doc. # 214) is retained under advisement to that extent and is referred to United States Magistrate Judge Ronald C. Newman to conduct the review and rule on whether any of the documents are to be produced.

### B. Motion for extension of time for discovery.

The plaintiff also seeks to extend the general discovery deadline to June 30, 1996, and

argues that the plaintiff, if necessary, should get ten more depositions per defendant based on the defendants' slow and disorganized production of documents. The defendants contend that their production of documents was proper, that the plaintiff has not shown good cause why he needs to re-open discovery, and that the plaintiff's requested extension would be prejudicial to their case. After considering both parties' arguments, the court concludes that discovery should be extended but that the precise contours of the extension should abide a ruling on the motion to compel. Although the court does not chastise the defendants for slow production of documents, the court does recognize the extraordinary burden placed on all parties by the sheer magnitude of the task. Moreover, if any production were ordered as a result of the in camera review, follow up discovery would surely be necessary. Thus, the court will conduct a status conference after the motion to compel has been ruled on and the parties have had the opportunity to assess the effect on other discovery which might be desired. In the interim the parties may only conduct any discovery previously authorized or upon which they mutually agree.[5]

### IV. Conclusion

The court recognizes that these rulings likely impact the trial schedule in this case. It is highly unlikely that an in camera review of Defendant Reynolds' 33 documents can take place and the motion to compel be finally ruled on swiftly enough to permit the processing of dispositive motions, which the defendants have indicated they intend to file, sufficiently in advance of the August 6, 1996, trial date to permit this case to proceed as set. The court does not take lightly its scheduling orders and is reluctant to make decisions which disrupt the orderly flow of litigation. Nevertheless, the rather novel nature of certain of the claims in this case and

---

his crime-fraud argument. Dr. Pollay's declaration essentially asserts that the representations in the TIRC's Frank Statement that member tobacco companies were concerned about their customers' health and that the TIRC would be run by disinterested scientists were knowingly false because the TIRC's true purpose was to conduct a positive, pro-cigarette public relations campaign to help sell cigarettes. The court believes that Dr. Pollay's declaration adds nothing to the

plaintiff's prima facie showing because it merely consists of his interpretation of evidence, and thus the court disregards it.

5. The plaintiff's motion to extend time to file plaintiff's exhibit and witness lists (doc. # 243), filed April 29, 1996, will also be taken up at that status conference.

the implications of the plaintiff's motion to compel mandate this extraordinary step, which the court concludes is taken in the best interests of justice. The court shall address the scheduling issues at the status conference to be held after the motion to compel has been ruled on.

**IT IS THEREFORE ORDERED BY THE COURT** that the 33 CTR special project documents on which defendant Reynolds claims privileges shall be delivered no later than May 10, 1996 to Magistrate Judge Ronald C. Newman for his in camera review; that the plaintiff's motion (Doc. # 214) to compel those documents is referred to United States Magistrate Judge Ronald C. Newman for his determination, subject to the terms of this order; and that the plaintiff's motion to compel is denied with respect to defendant American.

**IT IS FURTHER ORDERED** that the plaintiff's motion (Doc. # 215) for extension of time for discovery is granted in part, with a status conference to be set by the court as soon as practicable after the motion to compel is ruled on.

**IT IS SO ORDERED.**